# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRACY LOCKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 12 C 9345 |
| | ) |
| LIFE TIME FITNESS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Life Time Fitness, Inc.'s (Life Time) partial motion for summary judgment on Count I. For the reasons stated below, the motion for summary judgment is denied.

## BACKGROUND

Antowine Locke (Antowine), now deceased, was allegedly a member of a health and fitness club (Club) owned and operated by Life Time. Plaintiff Tracy A. Locke (Locke) was the wife of Antowine. On February 3, 2013, Antowine allegedly suddenly collapsed at the Club while playing basketball due to sudden cardiac arrest. Employees at the Club allegedly failed to retrieve an Automatic External Defibrillator (AED), which was available at the Club, to help Antowine. Over six

1

minutes allegedly elapsed before Emergency Medical Services (EMS) personnel arrived at the scene and treated Antowine. EMS personnel were unable to save Antowine. Locke contends that Antowine died due to the negligence of employees at the Club which included: allegedly failing to use the AED on Antowine, allegedly incorrectly informing the 911 operator that Antowine was suffering from an asthma attack, allegedly failing to adopt an emergency response plan, allegedly failing to train employees at the Club to properly identify and respond to health emergencies, allegedly failing to have such trained employees present during business hours, and allegedly failing to provide proper crowd control following the collapse of Antowine. Locke brought the instant action and includes in her complaint a wrongful death claim (Count I), a claim alleging willful and wanton misconduct (Count II), and a claim brought pursuant to the Family Expense Act, 750 ILCS 65 *et seq.* (Count III). Life Time removed the instant action to federal court, and now moves for partial summary judgment on the wrongful death claim in Count I.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Life Time argues that Locke is barred from pursuing the wrongful death claim in the instant action under the terms of an exculpatory clause (Exculpatory Clause) in a member agreement (Member Agreement) signed by Antowine when he joined the Club. It is undisputed that the Member Agreement signed by Antowine provided in part the following:

> **ASSUMPTION OF RISK AND WAIVER OF LIABILITY**
> I understand that there is an inherent risk of injury, whether caused by me or someone else, in the use of or presence at a Life Time Fitness center, the use of equipment and services at a Life Time Fitness center, and participation in Life Time Fitness' programs. This risk includes, but is not limited to:
> 1) Injuries arising from the use of any Life Time Fitness' centers or equipment, including any accidental or 'slip and fall' injuries;
> 2) *Injuries arising from participation in supervised or unsupervised activities and programs within a Life Time Fitness center* or outside a Life Time Fitness center, to the extent sponsored or endorsed by Life Time Fitness;
> 3) *Injuries or medical disorders resulting from exercise at a Life Time Fitness center, including*, but not limited to, *heart attacks*, strokes, heart stress,

> sprains, broken bones and torn muscles or ligaments; and
> 4) *Injuries resulting from the actions taken or decisions made regarding medical or survival procedures.*
> I understand and voluntarily accept this risk. I agree to specifically assume all risk of injury, whether physical or mental, as well as all risk of loss, theft or damage of personal property for me, any person that is a part of this membership and any guest under this membership while such persons are using or present at any Life Time Fitness center, using any lockers, equipment, or services at any Life Time Fitness center or participating in Life Time Fitness' programs, whether such programs take place inside or outside of a Life Time Fitness center. I waive any and all claims or actions that may arise against Life Time Fitness, Inc., its affiliates, subsidiaries, successors or assigns (collectively, 'Life Time Fitness') as well as each party's owners, directors, employees or volunteers as a result of any such injury, loss, theft, or damage to any such person, including and without limitation, personal bodily or mental injury, economic loss or any damage to me, my spouse, my children, or guests resulting from the negligence of Life Time Fitness or anyone else using a Life Time Fitness center. If there is any claim by anyone based on any injury, loss, theft or damage that involves me, any person that is a part of my membership, or any guest under this membership, I agree to defend Life Time Fitness against such claims and pay Life Time Fitness for all expenses relating to the claim, and indemnify Life Time Fitness for all obligations resulting from such claims.
> . . .
> I agree to and accept the terms and conditions above and I have received a complete copy of my Member Usage Agreement.

(R SF Par. 3)(emphasis added). Locke contends that she is not barred by the Exculpatory Clause from pursuing her wrongful death claim in this case. Locke argues that the alleged negligent conduct in this case was outside the scope of the anticipated conduct addressed in the Exculpatory Clause. Locke also argues that public policy weighs against enforcing the Exculpatory Clause. Under Illinois law, "exculpatory clauses exempting liability for negligence are generally disfavored" and

are construed "strictly against the parties they benefit." *Cox v. U.S. Fitness, LLC*, 2013 WL 6699464, at *2 (Ill. App. Ct. 2013); *Hamer v. City Segway Tours of Chicago, LLC*, 930 N.E.2d 578, 581 (Ill. App. Ct. 2010). Thus, based on the facts in this case, the court finds that the terms of the Exculpatory Clause should be construed against Life Time and in favor of Locke.

I. Scope of Exculpatory Clause

Locke argues that although the Exculpatory Clause covers injuries resulting from a heart attack, the Exculpatory clause is silent on the issue of improper training of Life Time employees relating to responding to health emergencies. In order for an exculpatory clause to be valid, the clause "must spell out the intention of the parties with great particularity and will not be construed to defeat a claim which is not explicitly covered by their terms." *Hamer*, 930 N.E.2d at 581 (internal quotations omitted)(quoting *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 493 N.E.2d 1022 (Ill. 1986)); *see also Garrison v. Combined Fitness Centre, Ltd.*, 559 N.E.2d 187, 190 (Ill. App. Ct. 1990))(stating that "an exculpatory clause, to be valid and enforceable, should contain clear, explicit, and unequivocal language referencing the types of activities, circumstances, or situations that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care" and that "[i]n this way the plaintiff will be put on notice of the range of dangers for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution"). An injury not specifically contemplated in an exculpatory clause can also

still be covered if it "fall[s] within the scope of possible dangers ordinarily accompanying the activity and, therefore, reasonably contemplated by the parties." *Hamer*, 930 N.E.2d at 581 (internal quotations omitted)(quoting *Evans v. Lima Lima Flight Team, Inc.*, 869 N.E.2d 195 (Ill. App. Ct. 2007)).

Locke argues that if Life Time wanted to cover inadequate training in the Exculpatory Clause, Life Time should have included such terms in the Exculpatory Clause. Life Time points out that in the Exculpatory Clause, Antowine assumed the risk of "[i]njuries arising from participation in supervised or unsupervised activities and programs within a Life Time Fitness center," "[i]njuries . . . resulting from exercise at a Life Time Fitness center, including, but not limited to, heart attacks" and "[i]injuries resulting from the actions taken or decisions made regarding medical or survival procedures." (R SF Par. 3). Based on such language, it should reasonably have been understood by the parties that Antowine could not bring suit against Life Time based on the mere fact that he died of a heart attack at the Club when exercising, or based on the fact that Life Time staff made poor decisions when treating Antowine prior to the arrival of the EMS personnel. However, in the instant action, Locke asserts more than that Antowine died of a heart attack and that Life Time employees made several poor decisions that resulted in the death of Antowine. Locke contends that the poor decisions stemmed from a failure by Life Time during a prior period to properly train employees how to respond to such emergency situations. The alleged failure to train employees to be ready for emergency situations is separate and apart from a failure by employees to act wisely in the heat

of the moment. Employees who were properly trained, for example, could still have made poor decisions during the emergency that could constitute negligence. Such decision-making is covered by the phrase "actions taken or decisions made regarding medical or survival procedures." (Compl. Par. 3). The allegation that Locke is relying on in this case is essentially that Life Time employees did nothing or at least nothing helpful for Antowine because they did not know what to do.

As indicated above, under Illinois law, exculpatory clauses are strictly construed against the benefactor of such clauses, which in this case is Life Time. *Hamer*, 930 N.E.2d at 581. Life Time was required to specifically identify improper training as an assumed risk in the Exculpatory Clause, and did not do so. Life Time seeks an inference in its favor that such risks relating to improper training were covered, but under Illinois law, the inferences must be made in favor of Locke, not Life Time. There are no specific terms in the Exculpatory Clause that would cover the type of training deficiencies alleged by Locke in the complaint. Nor are the alleged training deficiencies the types of risks that would fall within the scope of possible dangers ordinarily accompanying playing basketball at the Club. Life Time has not shown that the parties contemplated that Antowine would assume the risk for injuries resulting from the inadequate training of Life Time employees as to how to deal with health emergencies. For example, Antowine reasonably could have believed that employees at a fitness center, where individuals exercise and thus increase the likelihood of a heart attack, would be trained to recognize heart attack symptoms, and know the proper procedures to follow until EMS personnel arrives,

7

and would not, as Locke claims, call 911 and report an asthma attack.

Life Time also argues that Antowine agreed in the Exculpatory Clause to assume the "inherent risk of injury," and that improper training by Life Time employees was an inherent risk. Life Time also points out that in the Exculpatory Clause, Antowine waived any claims for injuries "resulting from the negligence of Life Time Fitness. . . ." (R SF Par. 3). However, as indicated above, in order for Life Time to obtain coverage in the Exculpatory Clause for certain conduct that would not ordinarily be foreseeable, Life Time must specifically identify such conduct in the Exculpatory Clause. Life Time could have added inadequate training to the Exculpatory Clause but chose not to do so and it cannot rewrite the agreement at this juncture. Nor could Life Time cover all possible risks by generally referring to inherent risks or a blanket statement that Life Time cannot be held liable for negligence. *See Cox*, 2013 WL 6699464, at *2 (stating that "[g]eneral language is not sufficient to indicate an intention to absolve a party from liability for negligence")(internal quotations omitted)(quoting *Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, 792 N.E.2d 1 (Ill. App. Ct. 2003)).

Life Time cites *Cox* in support of its position. (Reply 4). In *Cox*, the plaintiff fell and injured her wrist during a personal training session at the defendant fitness center. 2013 WL 6699464, at *1. Life Time argues that *Cox* is on point because the plaintiff in that case based her claim upon an alleged training deficiency. However, in *Cox*, the training at issue related to the training given by fitness center employees to customers on how to use the fitness equipment. *Id.* *Cox* did not involve training

of employees by the fitness center or training relating to responding to health emergencies such as in the instant action. The exculpatory clause in *Cox* also technically covered the alleged injury unlike in the instant action. In *Cox*, the exculpatory clause at issue covered risks relating to "fitness advisory services," and the court concluded that phrase technically encompassed when a customer was being instructed by a personal trainer and when the customer is "injured during a personal training session due to inadequate or faulty instruction." *Id.* In the instant action, however, the language in the Exculpatory Clause relating, for example, to the "[i]njuries resulting from the actions taken or decisions made regarding medical or survival procedures" does not specifically encompass the training of Life Time employees to respond to health emergencies. Thus, unlike in *Cox*, the exculpatory clause at issue does not on its face encompass the conduct or injury alleged in the complaint. Life Time has therefore not shown that the Exculpatory Clause precludes the negligence claim in this action.

The court notes that Locke argues that Life Time's motion for summary judgment should be denied because there are genuinely disputed facts as to the intent of the parties when entering into the Membership Agreement. However, Antowine is deceased and can no longer shed any light as to his intent. Nor have the parties pointed to other extrinsic evidence in the record relating to intent that would create any genuinely disputed facts as to intent. The plain language of the Exculpatory Clause fails to explicitly cover the training issue, and Life Time has not pointed to any evidence relating to intent that would create a factual issue. Therefore, there is

9

no need for that issue to proceed to the jury. Therefore, the wrongful death claim brought by Locke is not barred to the extent that it is premised on an alleged failure to properly train Life Time employees in regard to responding to health emergencies.

The court also notes that the only basis put forth by Locke in her response to the instant motion for avoiding coverage under the Exculpatory Clause is that she is basing her negligence claim on the alleged inadequate training of Life Time employees. (Ans. 1, 4-10). In the complaint, however Locke alludes to other alleged negligent conduct by Life Time employees such as failing to use the AED and failing to use proper crowd control procedures. (Compl. Par. 12). As this case proceeds, Locke will be precluded from changing her position and raising additional bases for her negligence claim in this action beyond the alleged improper training of Life Time employees.

II. Public Policy

Locke argues that to enforce the Exculpatory Clause would be contrary to public policy in Illinois. If the exculpatory clause "clearly appl[ies]," a court should "generally enforce [the clause] unless (1) it would be against a settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." *Hamer*, 930 N.E.2d at 581 (internal quotations omitted)(quoting *Jackson v. First National Bank of Lake Forest*, 114 N.E.2d 721 (Ill. 1953)). Locke argues that she is 44 years old and is now raising a

teenage son without Antowine. Locke also argues that the Exculpatory Clause was merely displayed to Antowine on a computer screen and that he signed on an electronic keyboard. Locke argues that it would be unfair to hold the widow of Antowine to the terms of the Exculpatory Clause. Such facts are insufficient to show that enforcement of the Exculpatory Clause is contrary to public policy. Regardless of the personal circumstances of members at Life Time, Life Time has a valid interest in limiting its exposure to liability for injuries. Such exculpatory clauses have been found valid under Illinois law, as long as they are properly drafted. *See Hellweg v. Special Events Management*, 956 N.E.2d 954, 956 (Ill. App. Ct. 2011)(stating that "[p]arties in Illinois may generally contract away liability for their own negligence"). Such clauses enable businesses to engage in commerce without incurring excessive financial risks that might otherwise make doing business prohibitively expensive. Illinois public policy also supports the honoring of contractual agreements. The evidence in this case indicates that Antowine was a consenting adult of sound mind and that he voluntarily signed the Membership Agreement in order to be permitted in exchange to join the Club. Public policy does not support interfering in such a contractual agreement between consenting parties. *See Hussein v. L.A. Fitness Intern., L.L.C.*, 987 N.E.2d 460, 465 (Ill. App. Ct. 2013)(stating that "Illinois will not 'interfere with the rights of two parties to contract with one another if they freely and knowingly enter into the agreement'")(quoting *Garrison v. Combined Fitness Centre, Ltd.*, 559 N.E.2d 187, 190 (Ill. App. Ct. 1990)). Locke may be the widow of Antowine, but she is suing both individually

and as the Special Administrator of Antowine's estate and thus there is nothing unfair about enforcing the Exculpatory Clause in this case, which was signed by Antowine. Illinois state courts "have held that [exculpatory] clauses are enforceable and not against public policy." *Cox*, 2013 WL 6699464, at *7. Locke has not pointed to any other facts that show that the Exculpatory Clause harms the public welfare or is contrary to Illinois public policy. Thus, the Exculpatory Clause is not contrary to public policy and is enforceable and covers the alleged negligent conduct referenced in the complaint except to the extent that Locke seeks to recover for alleged inadequate training of Life Time employees. Based on the above, Life Time's partial motion for summary judgment on Count I is denied.

## CONCLUSION

Based on the foregoing analysis, Life Time's partial motion for summary judgment on Count I is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 26, 2014